UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
UNDERDOG TRUCKING, LLC, REGGIE ANDERS,   :
                                         :
                         Plaintiffs,     :      09 Civ. 8918 (DLC)
                                         :
            -v-                          :          OPINION
                                         :          AND ORDER
VERIZON SERVICES CORPORATION, VERIZON    :
COMMUNICATIONS, INC., OSCAR APONTE,      :
MATT CHAPPELL, DOES 1-20, ABC INSURANCE  :
COMPANY, DEF INSURANCE COMPANY and XYZ   :
INSURANCE COMPANY,                       :
                         Defendants.     :
----------------------------------------X

For plaintiffs:
Eduardo J. Diaz
Mendy & Beckman LLP
275 Madison Avenue, 4th Floor
New York, NY 10018

For defendants:
Raymond G. McGuire
Kristina C. Hammond
Kauff McGuire & Margolis LLP
950 Third Avenue, 14th Floor
New York, NY 10022

DENISE COTE, District Judge:

        Plaintiffs Underdog Trucking, LLC ("Underdog") and Reggie

Anders ("Anders") have filed suit alleging, among other things,

racial discrimination in violation of 42 U.S.C. § 1981, breach

of the contract between Underdog and defendant Verizon Services

Corporation ("VSC"), and libel and slander.  Defendants VSC and

Verizon Communications, Inc. ("VCI," and together, the "Verizon

Defendants") have filed a motion to dismiss some of the claims

against them.  Defendants Oscar Aponte ("Aponte") and Matt

Chappell ("Chappell," and together, the "Individual Defendants") have filed a motion to dismiss the entire complaint against them.  For the reasons stated below, the Individual Defendants' motion is granted, and the Verizon Defendants' motion is granted in part.

BACKGROUND

The following facts, taken from the plaintiffs' April 23, 2010 "Amended Petition for Damages," are assumed to be true in deciding this motion.  The "General Services Agreement Between Verizon Services Corp. and Underdog Trucking LLC" ("the Agreement"), which is described below, is integral to the complaint.  See Halebian v. Berv, 590 F.3d 195, 199 (2d Cir. 2009).

Underdog is engaged in the freight and shipping industry in Arizona.  Anders and his wife, both of whom are African American, own Underdog.  VCI is a telecommunications company. VSC is alleged to be a subsidiary of VCI.  Aponte and Chappell are employed by the Verizon Defendants as Warehouse Manager and Warehouse Supervisor, respectively.

Prior to entering into the Agreement on April 3, 2007, Underdog provided services to the Verizon Defendants on an "open account" basis.  The complaint alleges that, prior to executing the Agreement, Verizon represented that "regardless of the contract terms," Verizon would keep Underdog as a contractor as

2

long as Underdog "provided good service."  The Agreement was for a term of one year, but contained an automatic renewal provision.  The contract was renewed automatically on April 3, 2008, and April 3, 2009.[1]

Plaintiffs worked for the Verizon Defendants for nearly two years without incident.  The plaintiffs allege that in February 2009, Aponte and Chappell became their supervisors, and began to treat Anders and Underdog differently from other contractors. Aponte routinely referred to African Americans as "those people" or "you people;" Aponte and Chappell referred to Anders as a "token Nigger."

The complaint also alleges that Chappell and Aponte harassed Anders about the money Underdog was making from the Verizon Defendants under the Agreement and began to question Underdog's bills without reason.  The Individual Defendants also demanded that Underdog cut its rates.  When Underdog refused, the Individual Defendants retaliated by giving work that Underdog typically performed to two other trucking companies. Both of these companies were owned by white individuals and lacked equipment necessary to complete the work.  Aponte and Chappell also retaliated by "bidding out" work that Underdog had previously performed and for which it had been compensated at

---

[1] The Agreement contains a choice-of-law provision selecting New York law and a forum selection clause that requires any suit arising out of the Agreement to be brought in a New York court.

the rates set by the Agreement's fee structure.  The plaintiffs also allege that the Verizon Defendants, Aponte, and Chappell withheld information about the scope of potential jobs (e.g., whether a contract was for one-way or round-trip hauling) that Underdog needed in order to bid competitively.  The plaintiffs complained to the Verizon Defendants about the derogatory racial remarks and reported that Aponte and Chappell were hiring less-qualified white contractors, but the Verizon Defendants denied the allegations without conducting any investigation.

The Verizon Defendants terminated the Agreement with Underdog in March 2009, but then asked Underdog to continue to work.  After March 2009, Underdog received fewer and fewer work orders.  At some point prior to the filing of this lawsuit, Underdog filed a claim with the Equal Employment Opportunity Commission ("EEOC").  On June 8, 2009, the EEOC issued Underdog a right to sue letter.

Plaintiffs filed the instant complaint on October 21, 2009. The Verizon Defendants filed a motion to dismiss on February 25, 2010.  At a pretrial conference on March 5, 2010, plaintiffs were given a final opportunity to amend their complaint, which they did on April 23.  The Verizon Defendants renewed their motion to dismiss on April 30;[2] it was fully submitted on May 21.

---

[2] The Verizon Defendants do not move to dismiss the plaintiffs' claims for unlawful race discrimination, discrimination based on

4

The Individual Defendants filed their motion to dismiss the complaint for lack of personal jurisdiction and insufficient service of process on May 14; the motion was fully submitted on June 4.

DISCUSSION

I.   The Individual Defendants' Motion to Dismiss

The Individual Defendants have moved to dismiss this action on the grounds that there is no personal jurisdiction over them and the plaintiffs failed to serve them.  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  Penguin Grp. (USA) Inc. v. American Buddha, --- F.3d ----, No. 09 Civ. 1739, 2010 WL 2365545, at *4 (2d Cir. June 15, 2010) (citation omitted).  Where, as here, there has been no discovery, the plaintiff need only make "legally sufficient allegations of jurisdiction" through its pleading and affidavits in order to survive a motion to dismiss.  Id. (citation omitted).

"A federal court's jurisdiction over non-resident defendants is governed by the law of the state in which the court sits -- including that state's long-arm statute -- to the extent this law comports with the requirements of due process."

termination, discrimination based on hostile contract environment, or the breach of contract claim brought against VSC.

Arar v. Ashcroft, 532 F.3d 156, 173 (2d Cir. 2008).  New York's
long-arm statute, N.Y. C.P.L.R. § 302(a), provides the bases to
obtain personal jurisdiction over a non-domiciliary.

    The Complaint identifies Aponte and Chappell as residents
of Arizona.  It does not include any grounds for the assertion
of personal jurisdiction in New York over either defendant.
Moreover, in their opposition to the motion to dismiss filed by
the Individual Defendants, the plaintiffs have identified no
basis under § 302(a) to find that jurisdiction exists.
Consequently, the motion to dismiss the claims against the
Individual Defendants for lack of personal jurisdiction is
granted.  Given this result, it is unnecessary to address the
plaintiffs' request for an extension of time to serve the
Individual Defendants.

  II.  The Verizon Defendants' Motion to Dismiss

    The Verizon Defendants have moved under Fed. R. Civ. P.
12(b)(6) to dismiss many but not all of the claims against them.
"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must
contain a 'short and plain statement of the claim showing that
the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556
U.S. ----, 129 S.Ct. 1937, 1949 (2009).  This rule "does not
require 'detailed factual allegations,'" id. (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 555 (2007)), but "[a] pleading
that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.'"  Id.
(quoting Twombly, 550 U.S. at 555); see also id. ("Threadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice.").

A trial court considering a Rule 12(b)(6) motion "accepts
all well-pleaded allegations in the complaint as true, drawing
all reasonable inferences in the plaintiff's favor."  Operating
Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595
F.3d 86, 91 (2d Cir. 2010).  To survive dismissal, "a complaint
must allege a plausible set of facts sufficient 'to raise a
right to relief above the speculative level.'"  Id. (quoting
Twombly, 550 U.S. at 555).  In other words, "a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'"  Iqbal, 129
S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Id. at 1949.
Applying the plausibility standard is "a context-specific task
that requires the reviewing court to draw on its judicial
experience and common sense."  Id. at 1950.

The Verizon Defendants have moved to dismiss six of the ten
claims in the complaint, as well as part of a seventh.  After
addressing whether VCI and Anders can be joined to the breach of

contract claim despite their being non-signatories to the
Agreement, the Opinion will examine whether plaintiffs have
failed to state a claim as to six of the causes of action.

A.   Breach of Contract Claim Brought Against VCI

VCI has moved to dismiss the breach of contract claim on
the ground that it is not a party to the Agreement.[3]  To state a
claim for breach of contract, "a complaint need only allege (1)
the existence of an agreement, (2) adequate performance of the
contract by the plaintiff, (3) breach of contract by the
defendant, and (4) damages."  Eternity Global Master Fund Ltd.
v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir.
2004) (citation omitted).

Determining whether an agreement exists between VCI and the
plaintiffs requires interpretation of the Agreement.  "Whether a
contract is ambiguous is a question for the court."  Golden Pac.
Bancorp v. F.D.I.C., 273 F.3d 509, 514 (2d Cir. 2001).  "The
interpretation of an unambiguous contract . . . is also a
question of law reserved for the court."  Id. at 515.  "If the
language of a contract is susceptible to more than one

_____

[3] The Verizon Defendants moved to dismiss all claims against VCI,
including the race discrimination claims not otherwise at issue
in this motion, on the theory that VCI was not a party to the
Agreement.  In their briefs in support of the motion, however,
the Verizon Defendants argue only that the plaintiffs cannot
state a claim for breach of contract against VCI because VCI is
not a party to the Agreement.  This motion will be treated as
one to dismiss the breach of contract claim only.

reasonable interpretation, the contract is ambiguous." <u>Dist.</u>
<u>Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers v.</u>
<u>United Techs. Corp.</u>, --- F.3d ----, No. 10 Civ. 702, 2010 WL
2680619, at *9 (2d Cir. July 8, 2010) (citation omitted).  The
interpretation of an ambiguous contract provision is a question
of fact.  <u>Id.</u>  Generally, one who is not a party to a contract
cannot be held liable for breach of that contract.  <u>Black Car &</u>
<u>Livery Ins., Inc. v. H & W Brokerage, Inc.</u>, 813 N.Y.S.2d 751,
752 (App. Div. 2d Dep't 2006); <u>Smith v. Fitzsimmons</u>, 584
N.Y.S.2d 692, 695 (App. Div. 4th Dep't 1992) ("As a general
rule, privity or its equivalent remains the predicate for
imposing liability for nonperformance of contractual
obligations.").

The Agreement, under the heading "Parties," contains the
following language:  "This General Agreement for Services
('Agreement') is made between Underdog Trucking LLC . . . and
Verizon Services Corp., . . . on behalf of itself and for the
benefit of its Affiliates (individually or collectively
'Verizon'), <u>each a Party and together the Parties hereto</u>."
(Emphasis supplied).

"Affiliate" is defined in the Agreement as follows:

> at any time, and <u>with respect to any</u>
> <u>corporation,</u> partnership, person or other
> entity, <u>any other corporation</u>, partnership,
> person or other entity <u>that</u> at such time
> directly or indirectly through one or more

> intermediaries (i) <u>controls, or is
> controlled by, or is under common control
> with, such first corporation</u>, partnership,
> person or other entity . . . .

(Emphasis supplied).

The Agreement's description of the parties to the contract could be read to include affiliates, as that term is separately defined in the Agreement.  The Verizon Defendants do not seriously dispute that VCI is an affiliate of VSC.  There is, as a result, at least an ambiguity as to whether VCI is a party to the Agreement.  Since it cannot be determined as a matter of law on a motion to dismiss that VCI is not a party to the Agreement, VCI's motion to dismiss the breach of contract claim is denied.

B.  Anders's Standing to Bring a Breach of Contract Claim

The Verizon Defendants have moved to dismiss the breach of contract, justifiable reliance/promissory estoppel, and breach of good faith and fair dealings claims brought by Anders on the ground that he is not a party to the Agreement and therefore lacks standing to bring these claims.  Because the latter two claims are dismissed in their entirety for the reasons described below, it is only necessary to discuss the breach of contract claim here.

"A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that clearly evidence an intent to permit enforcement by the third

party in question." <u>Premium Mortg. Corp. v. Equifax, Inc.</u>, 583

F.3d 103, 108 (2d Cir. 2009) (citation omitted).

> A party asserting rights as a third-party
> beneficiary must establish (1) the existence
> of a valid and binding contract between
> other parties, (2) that the contract was
> intended for his benefit and (3) that the
> benefit to him is sufficiently immediate,
> rather than incidental, to indicate the
> assumption by the contracting parties of a
> duty to compensate him if the benefit is
> lost.

<u>Madeira v. Affordable Hous. Found., Inc.</u>, 469 F.3d 219, 251 (2d

Cir. 2006) (citation omitted).  Conversely, the third-party

beneficiary claim may be dismissed "where the contract rules out

any intent to benefit the claimant," "or where the complaint

relies on language in the contract or other circumstances that

will not support the inference that the parties intended to

confer a benefit on the claimant."  <u>Subaru Distribs. Corp. v.</u>

<u>Subaru of America, Inc.</u>, 425 F.3d 119, 124 (2d Cir. 2005).

Anders does not have standing to allege a breach of

contract by the Verizon Defendants.  First, he is not a party to

the Agreement.  On the signature page of the Agreement, Anders

signed only as president of Underdog.  Second, he is not a

third-party beneficiary of the Agreement.  The Agreement does

not evince any intent by the parties to benefit him.  For

instance, the Agreement states that it is "for the benefit" of

the Verizon Defendants' affiliates, but there is no parallel

provision benefiting anyone associated with Underdog.
Additionally, the Agreement contains a provision prohibiting
Underdog from assigning its rights, obligations, or interests
under the contract without VSC's prior written consent.  See,
e.g., id. at 125 ("The anti-assignment clause suggests an intent
to limit the obligation of the contract to the original
parties.").  Therefore, rather than evidencing an intention to
benefit Anders, the Agreement's terms undercut any such
inference.

The plaintiffs make principally two arguments in support of
their contention that Anders is a third-party beneficiary of the
Agreement.  Neither is persuasive.  First, plaintiffs assert
that Anders should be treated as a third-party beneficiary
because he was "in essence" Underdog's alter ego, performing
nearly all of Underdog's duties under the contract.  The
plaintiffs explain that the Verizon Defendants "understood" that
Anders stood in Underdog's shoes and "knew that Anders
incorporated Underdog in preparation to enter into the
Agreement."  Anders has conflated two separate doctrines.  The
concept of alter ego status, which is associated with the
piercing of the corporate veil, is distinct from the creation of
third-party beneficiary status.  Compare NetJets Aviation, Inc.
v. LHC Commc'ns, LLC, 537 F.3d 168, 176 (2d Cir. 2008)
(discussing alter ego principles under Delaware law), and United

States v. Funds Held in the Name or for the Benefit of Wetterer, 210 F.3d 96, 106 (2d Cir. 2000) (New York law), with Madeira, 469 F.3d at 251 (discussing third-party beneficiary status).  In any event, the plaintiffs have not included in their complaint any allegations to support the piercing of the corporate veil. Even if the plaintiffs were permitted an opportunity to amend their complaint a second time[4] to include the facts described in their opposition to the motion, those allegations would be insufficient to plead an alter ego theory.[5]

Second, plaintiffs argue that whether Anders is an intended third-party beneficiary is a question of fact that is dependent on all of the circumstances surrounding the Agreement, and as such may not be resolved on a motion to dismiss.  Because "the parties' intention to benefit the third party must be gleaned from the face of the contract," Levin v. Tiber Holding Corp., 277 F.3d 243, 249 (2d Cir. 2002) (citation omitted), a motion to dismiss may be granted where no such inference can be drawn from the contract.  Subaru Distribs. Corp., 425 F.3d at 126

---

[4] Having sought to amend their complaint in response to the defendants' first motion to dismiss, the plaintiffs were notified at the pretrial conference that no further amendment of the complaint would be permitted.  They have not argued that there is any unfairness in so limiting their opportunity to amend and their requests to amend in response to this renewed motion to dismiss are denied.

[5] The parties have not addressed the impact that a finding that Underdog is Anders's alter ego would have on Underdog's status as a party-plaintiff in this litigation.

(affirming the dismissal of a third-party beneficiary claim).
The plaintiffs have pointed to no circumstances surrounding the
formation or performance of the Agreement that, when combined
with the terms of the Agreement, could confer third-party
beneficiary status on Anders.  Consequently, Anders's breach of
contract claim is dismissed.

C.   Breach of the Implied Duty of Good Faith and Fair
     Dealing

The Verizon Defendants have moved to dismiss the claim for
breach of the implied duty of good faith and fair dealing.
Under New York law, breach of the implied duty of good faith and
fair dealing "is merely a breach of the underlying contract."
Nat'l Market Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520,
525 (2d Cir. 2004) (citation omitted).  New York law "does not
recognize a separate cause of action for breach of the implied
covenant of good faith and fair dealing when a breach of
contract claim, based upon the same facts, is also pled."
Harris v. Provident Life and Accident Ins. Co., 310 F.3d 73, 81
(2d Cir. 2002); see also Dist. Lodge 26, 2010 WL 2680619, at *9.

The plaintiffs cannot maintain a separate cause of action
for breach of the implied duty of good faith and fair dealing
because their claim is "based upon the same facts" as their
breach of contract claim.  Among the grounds that the plaintiffs
have pleaded to support their breach of contract claim are

allegations that the Verizon Defendants:  asked Underdog to reduce the rates at which Underdog was compensated; required Underdog to bid on contracts instead of paying it pursuant to the schedule of fees in the Agreement; and "withh[eld] pertinent information that placed Underdog at a disadvantage when bidding on work it was offered."

The claim for breach of the implied duty of good faith and fair dealing alleges solely that the Verizon Defendants "misrepresent[ed] the facts of the scope work [sic] being let out to bid," asked Underdog to reduce its rates, and committed "other acts to be proven at trial."  This claim identifies only two breaches: the misrepresentation of the scope of work and the reduction of rates.  Each of these two grounds is encompassed by the breach of contract claim.

The plaintiffs' argument that the two claims are based on different allegations is unpersuasive.  The plaintiffs argue that their allegation that the Verizon Defendants "misrepresent[ed] the facts of the scope work [sic] being let out to bid" is sufficiently distinct from the pleaded breaches of contract to allow the claim to go forward.[6]  While it is true that the allegations within the two claims are not identical, they are "based upon the same facts."  Harris, 310 F.3d at 81.

---

[6] The plaintiffs may not rely on the vague reference to "other acts to be proven at trial" to distinguish the two claims.

The assertion that the Verizon Defendants misrepresented the scope of work is essentially encompassed by the allegation in the breach of contract claim that the defendants withheld pertinent information from Underdog in the bidding process.

D.   Promissory Estoppel

The Verizon Defendants have moved to dismiss the plaintiffs' promissory estoppel claim for failure to state a claim.[7]  To state a claim for promissory estoppel, a plaintiff must allege: "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000).  Where a plaintiff also alleges breach of a contract, a promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges that the defendant had a duty independent from any arising out of the contract.  Celle v. Barclays Bank P.L.C., 851 N.Y.S.2d 500, 501 (App. Div. 1st Dep't 2008).  Moreover, a party may not maintain a promissory estoppel claim where the promises on which the claim is based are expressly contradicted by a later written agreement covering the same subject matter.

---

[7] The plaintiffs' fifth claim for relief is styled "justifiable reliance/promissory estoppel," but the plaintiffs base their opposition to the motion to dismiss this claim solely on the elements for promissory estoppel under New York law.

<u>Capricorn Investors III, L.P. v. Coolbrands Int'l, Inc.</u>, 886
N.Y.S.2d 158, 159 (App. Div. 1st Dep't 2009).

        The plaintiffs allege that in the early months of 2007,
before they entered the Agreement on April 3, 2007, the Verizon
Defendants represented that they would offer Underdog a fair
contract and keep Underdog as a contractor so long as it
"provided good service."  Because the plaintiffs executed an
Agreement to govern their relationship, and this claim describes
no commitment extrinsic to that Agreement, they have failed to
state a claim for promissory estoppel.  The terms of their
relationship, including the circumstances under which that
relationship could be terminated, became those to which they
agreed in the detailed document that they executed.  Among other
things, the plaintiffs cannot plead reasonable reliance on oral
representations that were superseded by their contract.

        Plaintiffs argue that their claim must stand at least as to
Anders, since he did not execute the Agreement in his personal
capacity and, as the owner of Underdog, was entitled to rely on
the oral representation made by the Verizon Defendants to him.
This argument must be rejected.  As already discussed, Anders is
not a third-party beneficiary of the Agreement and lacks
standing to enforce it.  In addition, Underdog's officers and
owner cannot assert a claim to vindicate Underdog's rights that
Underdog itself may not assert.

E.   Libel and Slander

The defendants have moved to dismiss the plaintiffs' claim

for libel and slander.  Libel is defamation by printed or

written word.  Under New York law,

> libel consists of five elements: (1) a
> written defamatory statement of fact
> concerning the plaintiff; (2) publication to
> a third party; (3) fault (either negligence
> or actual malice depending on the status of
> the libeled party); (4) falsity of the
> defamatory statement; and (5) special
> damages or per se actionability (defamatory
> on its face).

Rosenberg v. Metlife, Inc., 453 F.3d 122, 123 n.1 (2d Cir. 2006)

(citation omitted).  Slander is spoken defamation.  The elements

of slander, which are similar to those for libel, are:

> (i) a defamatory statement of fact, (ii)
> that is false, (iii) published to a third
> party, (iv) "of and concerning" the
> plaintiff, (v) made with the applicable
> level of fault on the part of the speaker,
> (vi) either causing special harm or
> constituting slander per se, and (vii) not
> protected by privilege.

Albert v. Loksen, 239 F.3d 256, 265-66 (2d Cir. 2001) (citation

omitted).  Defamation claims are subject to the liberal pleading

standards of Fed. R. Civ. P. 8, Kelly v. Schmidberger, 806 F.2d

44, 46 (2d Cir. 1986), which requires averments to be "simple,

concise, and direct" rather than technical.  Fed R. Civ. P.

8(d)(1).  Nonetheless, the complaint must be sufficiently

detailed to enable the defendant to respond.  Thus, to state a

claim for defamation, a complaint must adequately identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published.

The plaintiffs have pleaded that the defendants falsely represented that Underdog was "overbilling Verizon for services," "was not a competitive bidder and was outbid on nearly all its bids," was "delinquent" in its performance of the contract, and was in breach of its contractual obligations to the Verizon Defendants.  The plaintiffs have failed to state a claim for libel or slander because their allegations do not identify any third parties to whom the statements were made or when they were made.  Moreover, the plaintiffs have not shown that they could cure this deficiency.

F.   Accounting

The Verizon Defendants have also moved to dismiss the plaintiffs' claim for an accounting.  Under New York law, an accounting is an equitable remedy that requires the existence of a fiduciary relationship, a joint venture, or other special circumstances between the plaintiff and the defendant warranting equitable relief.  <u>Grossman v. Laurence Handprints-N.J., Inc.</u>, 455 N.Y.S.2d 852, 858 (App. Div. 2d Dep't 1982).

A fiduciary relationship

> exists between two persons when one of them
> is under a duty to act for or to give advice
> for the benefit of another upon matters
> within the scope of the relation.  Such a
> relationship, necessarily fact-specific, is
> grounded in a higher level of trust than
> normally present in the marketplace between
> those involved in arm's length business
> transactions.

EBC I, Inc. v. Goldman Sachs & Co., 832 N.E.2d 26, 31 (N.Y. 2005) (citation omitted).  Where the parties have entered into a contract, the court should look to the agreement for the "particular contractual expression establishing the parties' interdependency" and "[i]f the parties do not create their own relationship of higher trust, courts should not ordinarily" impose one.  Id. (citation omitted).

The plaintiffs have not stated a claim for an accounting because they have neither alleged the existence of a fiduciary relationship, joint venture, or any other special circumstances; nor identified any support in the Agreement for finding any such relationship.  For instance, the complaint does not allege the presence of a duty on the part of the Verizon Defendants to act for or to give advice for the benefit of the plaintiffs.  The complaint also does not give any reason that such a duty should have arisen in the arm's length business transaction evidenced by the Agreement.  In fact, the Agreement provides, under the heading, "Relationship of Parties":  "Nothing contained in this Agreement is intended to give rise to a partnership or joint

venture between the Parties or to impose upon the Parties any of the duties or responsibilities of partners or joint venturers." In light of the failure to allege any special relationship, the plaintiffs' claim for an accounting fails.

The plaintiffs argue for the first time in their opposition brief that the Verizon Defendants did have a fiduciary duty to the plaintiffs based on an informal relationship of reasonable trust, citing Brass v. Am. Film Techs., 987 F.2d 142, 150-51 (2d Cir. 1993).  This argument is not persuasive.  Examples of the types of relationships for which a fiduciary duty has been recognized include "priest and parishioner, bank and depositor, majority and minority stockholder, and close friends or family members."  Id. at 151.  None of these relationships, or anything similar to any of them, has been alleged here.

G.   Claims for Punitive Damages and Attorneys' Fees

Finally, the Verizon Defendants request that the plaintiffs' separate causes of action for punitive damages and attorneys' fees be stricken.  The plaintiffs do not oppose striking these two claims from the complaint and they are stricken.

CONCLUSION

The Individual Defendants' May 14 motion to dismiss is granted.  The Verizon Defendants' April 30 motion to dismiss is granted in part:  the fourth claim for relief (breach of

contract) is dismissed as to Anders only; the fifth (promissory estoppel), sixth (libel and slander), seventh (implied duty of good faith and fair dealing), eighth (accounting), ninth (punitive damages), and tenth claims (attorneys' fees and costs) are dismissed in their entirety.

    SO ORDERED:

Dated:    New York, New York
          July 20, 2010

                                    _____

                                    DENISE COTE
                                    United States District Judge

22